IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Laquan Christian White,**<br>Petitioner, | )<br>)<br>) |
| v. | )    1:18cv261 (CMH/IDD)<br>) |
| **Harold W. Clarke,**<br>Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

Laquan Christian White, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of drug offenses following a bench trial in the Circuit Court of the City of Portsmouth. On May 30, 2018, respondent filed a Rule 5 Answer and a Motion to Dismiss the petition with a supporting brief and exhibits, and supplied petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 7-10] On June 18, 2018, petitioner submitted a reply captioned as a Memorandum of Law in Support of Motion for Summary Judgment. [Dkt. No. 13] Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

### I. Background

On April 29, 2015, White was convicted of possession of cocaine with intent to distribute, third offense; conspiracy to distribute cocaine; and misdemeanor possession of marijuana with intent to distribute. Case Nos. CR 1401444-01 through -03. On October 6, 2015, he was sentenced to ten years incarceration on the conviction of possession of cocaine, and he

received suspended sentences on the two additional charges. Resp. Ex. 1. In an opinion denying White's subsequent petition for direct appeal, a judge of the Virginia Court of Appeals described the facts underlying the convictions as follow:

> [T]he evidence proved that on May 30, 2014, a search warrant was executed at 552 Madison Street, Apartment B in Portsmouth. Detective R. Aguilar obtained the warrant as part of an ongoing investigation to build a case against appellant. Prior surveillance from around 8:00 a.m. that morning by Sergeant Jeremiah Lee had revealed the presence of appellant and an associated green Lexus at the address. Appellant drove away in the Lexus at one point, but returned shortly after. Lee remained in his surveillance location during the subsequent execution of the warrant.
>
> Detective J. L. Dempsey was the assistant team leader for the SWAT team executing the warrant. He testified that in attempting to gain entry into the residence, the team found the door barricaded by a couch, necessitating a shotgun breach to remove the door. Dempsey was the first to encounter appellant, who was in a state of partial undress in an upstairs bedroom with Shawnkesha Roscoe, appellant's mistress. Roscoe was on the bed, and appellant appeared to be moving from the bed when Dempsey entered. Dempsey did not notice any drugs or paraphernalia in plain sight, but testified that his purpose was to take the individuals into custody and that appellant was compliant with his requests. Officer E. Sjoberg was behind Dempsey after entering the residence and cleared the upstairs bedroom. Sjoberg noticed the toilet bowl was still in the process of flushing, and he reached in to recover a lid to a container. Appellant's brother, Melvin White, was on the floor outside the bathroom. Sjoberg held White there until the special investigations officer recorded the location and collected the evidence.
>
> While the front door breach was still in progress, Detective Adams, part of the special investigations unit assisting the SWAT team, established the rear perimeter of the residence. Before the team gained entry, White had opened the back door and Adams instructed him to get on the ground. Instead of complying, White closed and locked the door, retreating back into the residence and up the stairs where Sjoberg found him later.
>
> Detective Shelkey collected evidence at the scene once the location

was secure. From appellant's person, Shelkey recovered $1,221 in cash currency of mostly small-denomination bills. From White, she recovered $220 of small-denomination bills and a small bag of suspected marijuana from his wallet. A digital scale disguised to look like a cell phone was recovered from inside the living room closet. In the upstairs bathroom, Shelkey recorded a clear plastic bag containing marijuana that had been recovered from the toilet and a clear plastic bag of cocaine that was recovered from the bathroom floor. Shelkey also recovered a Dominion Power bill for the residence that listed appellant's name, as well as a personal letter addressed to appellant found in the front bedroom. When searching the Lexus, Shelkey recovered $2,700 in hundred-dollar bills from a disc changer in the trunk.

The investigation then moved to the downtown office of the Portsmouth Police Department. Detective Adams smelled marijuana near the holding area where Roscoe was being held. Roscoe reached toward her waist, and Adams told her to wait until he called a female officer to search her. Detective Shelkey entered a room with Roscoe, who already had small "quarter bags of marijuana" in her hand. Shelkey instructed her to place them on the table. Shelkey asked if that was everything, and Roscoe said no. Roscoe retrieved additional marijuana and cocaine from her genital area. Shelkey processed all the items recovered from Roscoe into evidence. Adams advised Roscoe of her Miranda rights and asked for her basic information, and Roscoe provided her telephone number.

At appellant's bench trial, Brian Meinweiser was introduced as an expert in analysis and identification of controlled substances. A total or forty-one individual baggies of cocaine and seventeen individual baggies of marijuana were collected for evidence, and all tested were positively identified as cocaine and marijuana. Sergeant S. W. Johnson testified as an expert in the use, packaging, and distribution of narcotics. Johnson reviewed the drugs submitted into evidence and immediately identified the packaging method of the marijuana as a "nickel bag" and "dime bag," and the cocaine as "dime rocks," with numerous packages of each. He opined that due to the scales, the manner of packaging, and the two different types of drugs, the drugs were inconsistent with personal use.

The Commonwealth called [Melvin] White to testify against appellant. He testified that on the day of the SWAT raid, he was "helping [appellant] chop up some cocaine and hand-deliver [it] to

3

> some people." He admitted to selling drugs with appellant in the
> weeks leading up to May 30, 2014, and to being present when
> appellant acquired the drugs from his buyer. White testified that
> appellant received a solid "700" of cocaine and broke it down with a
> razor and a plate before putting it into individual bags. White stated
> that his agreement with appellant was to receive part of the proceeds
> for selling the drugs. When appellant first noticed the police, he told
> White to take the cocaine and marijuana and run out the back door.
> White corroborated Adams' testimony that he ran into the officers at
> the back door before shutting and locking the door. He then ran
> upstairs, and appellant told him to flush the drugs in the toilet.
> Roscoe then ran upstairs with appellant and took the marijuana into
> the upstairs bedroom. White identified the individual bags of drugs
> introduced at trial and examined by Meinweiser as the drugs he tried
> to flush down the toilet.

White v. Commonwealth, R. No. 1504-15-1 (Va. Ct. App. Apr. 14, 2016), slip op. at 1-4; Resp. Ex. B.[1] A three-judge panel of the Court of Appeals likewise denied White's petition for appeal on August 2, 2016, Resp. Ex. 3, and the Supreme Court of Virginia refused his petition for appeal on March 6, 2017. White v. Commonwealth, R. No. 161261 (Va. Mar. 6, 2017); Resp. Ex. 4.

White filed a pro se petition for a state writ of habeas corpus in the Supreme Court of Virginia on June 13, 2017, raising the following claims:

> 1. The prosecution obtained his conviction through the perpetration of fraud upon the court by knowingly eliciting false testimony from his brother, Melvin White.
>
> 2. He received ineffective assistance of counsel because his attorney failed to:
>
>    a. Conduct a pretrial investigation;

---

[1] Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts.

4

- b. Seek the suppression of evidence obtained through a search that violated the Fourth Amendment;

- c. Move to suppress an unidentified statement made during interrogation;

- d. Investigate Melvin White's criminal background;

- e. Move to suppress an unidentified statement made to law enforcement by an informant.

3. The evidence was insufficient to support his conviction of conspiracy to distribute a Schedule I or II controlled substance.

4. He did not reside at 552 Madison Street, no drugs were found on his person when the search warrant was executed at that location, and his search and seizure at that location violated his rights under the Fourth Amendment.

5. He received ineffective assistance of counsel because his attorney failed to:

    - a. Move to suppress his statements to law enforcement; and

    - b. Conduct an adequate pretrial investigation to permit effective impeachment of the prosecution's witnesses.

6. The search warrant issued for 552 Madison Street was facially unconstitutional.

7. His convictions are unconstitutional due to counsel's failure to move to suppress the fruits of the search warrant.

Resp. Ex. 5. The Supreme Court of Virginia dismissed the petition on November 28, 2017. White v. Clarke, R. No. 170792 (Va. Nov. 28, 2017); Resp. Ex. 5.

White then turned to the federal forum and timely filed the instant application for § 2254 relief on March 2, 2018.[2] In it, he raises the same claims and subclaims he argued in his state habeas corpus petition, and adds the following claims which were exhausted on his direct appeal:

8. The trial court erred in denying his motion to strike the evidence at the conclusion of the Commonwealth's case because the evidence was insufficient to prove beyond a reasonable doubt that he was aware of the presence of drugs in the residence or that he had them in his possession.

9. The trial court erred in considering as evidence against him the $2,700 return to his wife in a civil forfeiture action, because the Commonwealth should not be allowed to assert inconsistent positions with respect to evidence by reason of the doctrine of collateral estoppel.

10. The trial court erred in allowing the recorded telephone conversations to be played, since the recording was made in violation of the Virginia Code.

11. The trial court erred in denying his motion to strike following the Commonwealth's case because the Commonwealth's Attorney concurred in the motion. Because this assignment of error is not preserved in the record, petitioner relies on the ends of justice exception of Rule 5A:18 of the Rules of the Court of Appeals of Virginia.

---

[2]For federal purposes, a pleading submitted by an incarcerated litigant is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988); Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991) Here, White certified that he placed his petition in the prison mailing system on March 2, 2018. Pet. at 15.

## II. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). Respondent acknowledges correctly that all of White's claims were exhausted in the state forum.

Nonetheless, claims 1, 3, 4 and the portion of Claim 6 that challenges the validity of the search warrant are procedurally defaulted from federal review. When White raised these claims in his state habeas corpus proceeding, the Supreme Court of Virginia determined that they were barred by the holding of Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 280 (1974) because they could have been, but were not, raised on direct appeal and thus were not cognizable on habeas corpus review. If a state court finds, based on an adequate and independent state-law ground, that a claim is procedurally defaulted from review, then the claim is not reviewable in federal habeas corpus. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Williams v. French, 146 F.3d 203, 208-09 (4th Cir. 1998) (internal citations omitted). A state procedural rule is "adequate" if it is "regularly or consistently applied by the state court," and is "independent" if its application does not depend on the federal Constitution. Williams, 146 F.3d at 209 (internal citations omitted). The rule used by the Virginia court to default White's claims 1, 3, 4 and parts of 6 has been held to be independent and adequate. See Reid v. True, 349 F.3d 788, 805 (4th Cir. 2003); Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997) ("The procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision."). Therefore, those claims are likewise procedurally defaulted from federal review.

Claims 8 and 11 of this petition also are procedurally barred, for a different reason. When

these claims were raised on direct appeal, the Court of Appeals found as to Claim 8 that White had waived the opportunity to challenge the sufficiency of the evidence under Virginia law by failing to renew his motion to strike. White v. Comm., Resp. Ex. 2 at 4. As to Claim 11, the Virginia court determined that the claim was waived because counsel invited the challenged ruling. In response to an initial motion to strike, the trial court struck an obstruction of justice charge and a conspiracy charge, and reduced a marijuana charge to a misdemeanor. The court then asked petitioner's counsel, "Does that work for you, Mr. Levin?," and counsel responded, "Yes sir, Judge, it certainly does." Id. at 5. The appellate court found that under these circumstances, petitioner had waived his argument that the court erred in denying the motion to strike, and it refused to apply the ends of justice exception of Rule 5A:18 to consider it. Id. Because the Supreme Court of Virginia refused further review of the Court of Appeals' decision without explanation, the reasoning of the Court of Appeals is imputed to it. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Because the state courts thus declined to review the merits of claims 8 and 11 of this petition on the basis of an independent and adequate state law ground, see Weeks v. Angelone, 4 F. Supp. 2d 497, 515 (E.D. Va. 1998) (holding that the contemporaneous objection rule of Va. Sup. Ct. Rule 5:25 is an adequate and independent state law ground), those claims are procedurally defaulted from federal review.

Federal courts may not review procedurally barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501

U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).[3] In petitioner's reply, captioned as his Memorandum of Law in Support of Summary Judgement [Dkt. No. 13], he makes no attempt to demonstrate cause and prejudice for the defaults of the foregoing claims, and argues instead only that all the claims are meritorious. Accordingly, claims 1, 3, 4, most of 6, 8, and 11 of this petition are procedurally defaulted from federal review.

## II. Non-Cognizable Claims

Claims 9 and 10 of this petition are not cognizable predicates for § 2254 relief. In Claim 9, White argues as he did not direct appeal that the "trial court erred in considering as evidence against [him] the $2,700 return to his wife in the civil forfeiture action...". In Claim 10, he contends the trial court erred in allowing recorded telephone conversations to be played because they were made in violation of the Virginia Code. Both of those claims allege only errors in state evidentiary rulings, and absent circumstances not present here, questions regarding the admissibility of evidence under state law present no federal question and hence cannot support

---

[3]Moreover, even if Claim 4 and the portion of Claim 6 that challenges the search warrant on Fourth Amendment grounds were not procedurally defaulted, they still would gain petitioner no relief. Federal consideration of such arguments is foreclosed by the doctrine of Stone v. Powell, 428 U.S. 465, 494 (1976), where the Supreme Court held that when a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. As the Fourth Circuit has observed, "Stone ... marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in the state court." Grimsley v. Dodson, 696 F.2d 303 (4th Cir. 1982). In this case, the record makes it readily apparent that the Commonwealth afforded White a full and fair opportunity to litigate his contention that his Fourth Amendment rights were violated, so even if Claims 4 and 6 were not procedurally defaulted they would not be cognizable on the merits.

habeas corpus relief. Barbe v. McBride, 521 F.3d 443 (4th Cir. 2008); Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 1993).

## IV. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## V. Analysis

In the sole claims which are federally cognizable, White argues that he received

ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy."). To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice."

Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

A. Inadequate investigation

In Claims 2(a), 2(d), and 5(b), White argues that he received ineffective assistance because his counsel failed in general to conduct an adequate pretrial investigation (Claim 2(a)) and failed in particular to investigate and develop a sufficient basis upon which to cross-examine his brother Melvin White (Claims 2(d) and 5(b)). Specifically, petitioner asserts that counsel could have learned that his brother Melvin was serving prison terms for firearms offenses during the period Melvin testified that the two had been selling drugs together. On habeas corpus review, the Supreme Court of Virginia rejected these contentions for the following reasons:

> In a portion of claim (2), petitioner contends he was denied the effective assistance of counsel because counsel did not investigate [Melvin] White's criminal background. Petitioner alleges counsel could have learned White was serving prison sentences for two firearms offenses during the two to three years he testified he and Petitiotner had sold drugs together prior to their arrest during the May 30, 2014 execution of a search warrant on the apartment of Petitioner's girlfriend, Shawnkesha Roscoe. Petitioner also appears to claim counsel would have been able to impeach White more effectively had he learned the exact nature of White's prior convictions, specifically, the two firearms offenses.[4]
>
> The Court holds that this portion of claim (2) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcript and a copy of White's statement to police, demonstrates White told police he and petitioner had been selling drugs and dividing the proceeds. At trial, White

---

[4]Although not so identified by the Virginia court in its opinion, the argument that counsel would have been able to impeach Melvin White more effectively had he learned the exact nature of White's prior convictions was Claim 5(b) to the state habeas petition and is Claim 5(b) in this federal action.

12

testified that, on the day he and petitioner were arrested, they had been "chop[ping]" up cocaine and "hand-deliver[ing]" it to people. White mentioned he had first started selling drugs with petitioner "a couple of years ago." White stated he and petitioner had purchased a quantity of cocaine together the night before their arrest and they had agreed to divide the proceeds from selling the drugs. White confirmed he was testifying in order to gain leniency with respect to his own criminal charges, including the dismissal of several charges. On cross-examination, White described the charges that would be dismissed in exchange for his truthful testimony and acknowledged he had been convicted of five felonies, including one firearm offense and grand larceny. Counsel admitted a copy of White's plea agreement into evidence.

Under the circumstances, counsel could have reasonably determined it was unnecessary to investigate the exact dates of White's prior incarceration. Petitioner's charges were based on alleged conduct that occurred on the day of and immediately prior to petitioner's and White's arrest. Thus, counsel could have sensibly concluded he did not need to search for evidence that petitioner and White did not engage in joint narcotics trafficking prior to that time period. Such evidence would not have been materially relevant to petitioner's defense. To the extent petitioner alleges counsel should have been more prepared to impeach White with evidence of the dates of his incarceration and the nature of his prior offenses, counsel could have reasonable [sic] determined that such preparation was unnecessary given the wealth of other impeachment evidence counsel had at his disposal.

For similar reasons, petitioner has failed to show counsel's alleged neglect prejudiced him at trial. Evidence that White was incarcerated during a time other than the day of and the night before his and petitioner's arrest would not have materially altered the strength of the evidence proving petitioner engaged in a conspiracy with White to distribute narcotics. Petitioner does not dispute that White was released from prison during the time he claims he and petitioner purchased cocaine, packaged it for sale, distributed the drug, and formed an agreement about sharing the proceeds of the sale. See Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000) (discussing the elements of a criminal conspiracy). Additionally, impeaching White's statement regarding the amount of time he and petitioner had previously sold drugs together would have simply been cumulative of the other evidence undermining White's credibility. The same is true for further evidence regarding the nature of White's

> prior convictions. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
> * * *
>
> In a portion of claim (5), petitioner appears to contend he was denied the effective assistance of counsel because counsel did not move for discovery materials.
>
> The Court holds that this portion of claim (5) satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. The record, including the manuscript file associated with petitioner's criminal trial, demonstrates counsel moved for and received discovery materials from the Commonwealth. Additionally, petitioner has not specified what information or evidence counsel neglected to secure from the Commonwealth. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

White v. Clarke, R. No. 170792, slip op. at 2 - 3, 5.

For the reasons which are thoroughly expressed in the foregoing opinion, petitioner's claims that his lawyer failed to perform adequate pretrial investigation satisfy neither prong of the Strickland analysis for ineffective assistance. Accordingly, the Supreme Court of Virginia's rejection of these claims was neither contrary to the clearly-established federal law upon which it expressly relied nor based on an unreasonable determination of the facts. The same result thus is compelled here. See Williams, 529 U.S. at 412-13.

B. Failure to suppress statements

In claims 2(c), 2(e) and 5(a), petitioner argues that counsel provided ineffective assistance by failing to move to suppress an unidentified statement he made during interrogation (2(c)) and an unidentified statement allegedly made by an informant to law enforcement (2(e) and 5(a)). On

habeas corpus review, the Supreme Court of Virginia rejected these contentions for the following reasons:

> In portions of claims (2) and (5), petitioner contends he was denied the effective assistance of counsel because counsel did not file a suppression motion based on the ground that petitioner was never read his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), during his post-arrest questioning by police.
>
> The Court holds that this claim satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates petitioner did not 'cooperate' with police, and petitioner has not identified the substance, incriminating or otherwise, of any statement he made during custodial interrogation. Accordingly, petitioner has not alleged circumstances establishing counsel should have deemed it necessary to seek to suppress any statement petitioner may have given. Additionally, no statement made by petitioner during custodial interrogation was admitted against him at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
> In portions of claims (2) and (5), petitioner appears to contend counsel was ineffective for not moving to suppress the statements individuals other than petitioner, such as White and a confidential informant, made to the police.
>
> The Court holds that this claim satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. Petitioner has not proffered on what ground counsel might have moved to suppress statements given by persons other than petitioner or attempted [to] explain how he might have had standing to challenge the admissibility of any such statement. Although petitioner obliquely suggests counsel might have discovered White never made a statement to the police, the record, including a copy of White's statement, refutes petitioner's claim. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

White v. Clarke, R. No. 170792, slip op. at 4 - 5.

These determinations by the Virginia Supreme Court were factually reasonable as to both petitioner's statement and that of the informant. In addition, its conclusion that White fails to show that the elements of ineffective assistance were met as to either component of the claim is in accord with the precepts of Strickland, supra. Therefore, these claims likewise merit no federal relief. See Williams, 529 U.S. at 412-13.

C. Failure to suppress evidence

In claims 2(b), a portion of 6, and 7, White argues that counsel provided ineffective assistance by failing to argue that evidence obtained in violation of the Fourth Amendment should have been suppressed. The Supreme Court of Virginia found no merit to this contention for the following reasons:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel did not move to suppress the fruits of petitioner's arrest as violative of the Fourth Amendment. Petitioner appears to contend such a motion would have been successful because the search warrant supporting the search of Roscoe's apartment contained false information supplied by a confidential informant, specifically, that petitioner resided at the apartment. Petitioner claims he had no connection to and did not reside at the apartment and that he was arrested despite that he did not personally possess contraband.
>
> The Court holds that this claim satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates petitioner was the 'target' of the search warrant and that Roscoe's apartment contained narcotics and indicia of narcotics distribution. Also in the apartment, police found an electric bill for the apartment in petitioner's name and a letter addressed to petitioner bearing the apartment's address. On petitioner's person, police found $1,221 in bills of various denominations. Considering the totality of these circumstances, counsel could have reasonably determined officers had probable cause to arrest petitioner and there is no reasonable likelihood that challenging the legality of petitioner's arrest would have been successful. See United States v. Holder, 990 F.2d 1327,

> 1328-29 (D.C. Cir. 1993) (presence in an apartment from which narcotics are being distributed may be sufficient to establish probable cause for an arrest). Additionally, aside the cash found on petitioner's person, petitioner has not identified any fruits of his arrest, as distinguished from the fruits of the search of the apartment, that might have been excluded had counsel successfully challenged the lawfulness of petitioner's seizure. Thus, petitioner has failed to demonstrate that, but for counsel's alleged errors, the result of the proceeding would have been different.

White v. Clarke, R. No. 170792, slip op. at 3 - 4.

For the reasons which are thoroughly explained by the Supreme Court of Virginia, petitioner's claims that his lawyer provided constitutionally deficient assistance by failing to argue for suppression the fruits of petitioner's arrest on the ground that his rights under the Fourth Amendment were violated satisfy neither component of the Strickland analysis. Because this determination was based on a reasonable interpretation of the facts and is in accord with federal principles, the decision may not be disturbed here. Williams, 529 U.S. at 412-13.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 26th day of October 2018.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia